UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HATICE OKCU,<br><br>            Plaintiff,<br><br>      v.<br><br>BACKBLAZE, INC., et al.,<br><br>            Defendants. | Case No.  23-cv-00614-TLT<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 33 |

Before the Court is Defendants Backblaze, Inc., Brian Wilson, Sean Harris, and Derman Uzunoglu (collectively, "Defendants")'s motion to dismiss the third, fourth, and fifth causes of action in Plaintiff Hatice Okcu's complaint.  The Court finds that Defendants' motion can be decided without oral argument.  Civ. L. R. 7-1(b).  For the reasons below, Defendants' motion to dismiss is **GRANTED IN PART**.  Ms. Okcu may amend her complaint within 21 days of this Order.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Ms. Okcu immigrated to the "[U.S.] from Turkey in 1991 as a Kurdish refugee" and later became a U.S. citizen.  ECF No. 1 ("Compl.") ¶ 5.  Since 1992, Ms. Okcu has owned and operated Kim's Tailoring in San Mateo, California.  *Id*. ¶ 4.  Ms. Okcu's shop is located in 300 Ben Franklin Court, a courtyard in downtown San Mateo, which contains several shops and restaurants.  *Id.* ¶ 15.  For the entire time she has owned and operated Kim's Tailoring, Ms. Okcu has leased her facilities from Behling and Associates ("B&A"), a property management company.  *Id.* ¶ 14.

Defendant Backblaze, Inc. ("Backblaze") is a cloud storage company based in San Mateo, California.  *Id.* ¶ 6.  The remaining individual defendants, Brian Wilson, Sean Harris, and Derman

1    Uzunoglu, are employees of Backblaze.  *Id.* ¶¶ 7-9.  Mr. Wilson is a co-founder and Chief

2    Technology Officer ("CTO") of Backblaze, while Mr. Harris is a senior facilities manager and Mr.

3    Uzunoglu is a handyman at the company.  *Id.*  Ms. Okcu has also asserted claims against unknown

4    Doe Defendants.  Id. ¶ 10.

5         In 2014, Backblaze began subleasing parts of 300 Ben Franklin Court.  *Id.* ¶ 16.  After it

6    entered into certain subleases and lease agreements, Backblaze has acted as a co-landlord for most

7    of the stores at 300 Ben Franklin Court.  *Id.* ¶ 17.  Backblaze has altered the courtyard with

8    extensive construction and electrical work.  *Id.*

9         In August 2014, Ms. Okcu entered into a sublease agreement with Backblaze regarding a

10   portion of her store front ("Sublease").  *Id.* ¶ 18.  Specifically, the agreement states that Ms. Okcu

11   would sublease the following:

12        [A] portion of the space described as 300 Ben Franklin Court, San
          Mateo, California 94401, (the "Premises") which comprises an area
13        of approximately 442 square feet located in the back of 300 Ben
          Franklin Court. The premises are more particularly described as
14        follows: Backblaze shall occupy the rear portion of the space,
          approximately 26 feet from the rear door and the entire width of that
15        space, 17 feet. The premises shall be used for only the following
          permitted use: Office.

16   *Id.*  In addition, Backblaze agreed that "[a]t the expiration of the lease, the Tenant [Backblaze] will

17   quit and surrender the premises in as good a state and condition as they were at the

18   commencement of the lease."  *Id.*

19        After the parties entered the Sublease, Backblaze built a wall at the back of Ms. Okcu's

20   store, which partitioned the store and prevented Ms. Okcu from accessing her store's bathroom

21   and water facilities.  *Id.* ¶ 19.  Around this time, Backblaze promised Ms. Okcu that she would still

22   be provided access to her bathroom.  *Id.*  It is unclear from the complaint whether this promise was

23   part of the written agreement or a separate verbal promise.  *See id.*  Since the wall was built,

24   Backblaze has repeatedly denied Ms. Okcu access to her bathroom or water facilities for over ten

25   years, despite Ms. Okcu's requests.  *Id.* ¶¶ 19, 21.

26        In addition, Ms. Okcu asserts that Backblaze treats her differently from other business

27   owners.  *Id.* ¶¶ 21-22.  Ms. Okcu avers that Defendants have discriminated against her due to her

28   status as an immigrant and Muslim woman.  *Id.* ¶ 21.  For example, Backblaze has entered

United States District Court
Northern District of California

2

multiple subleases, but they have only blocked Ms. Okcu's access to her bathroom and water facilities. *Id.* Furthermore, Backblaze employees have physically threatened Ms. Okcu, used racial or ethnic terms when speaking with her, and insulted Ms. Okcu's ability to speak English. *Id*. ¶¶ 22-23. For instance, Mr. Uzunoglu went into Ms. Okcu's store and on at least three separate occasions threatened to kill her. *Id*. ¶ 23. He also used "racially charged language" and told her to "get out of the [U.S.]". *Id*.

On or around November 2, 2022, Mr. Harris told Ms. Okcu that Backblaze was taking over her lease with B&A and she could either vacate the premises or start paying rent to Backblaze. *Id*. ¶ 24. Ms. Okcu tried to ask questions about her B&A lease, but Mr. Harris was evasive and warned her not to speak to anyone at B&A or Backblaze. *Id*. ¶¶ 24-25. Mr. Harris stated Ms. Okcu's lease with B&A either did not exist or was invalid, but regardless, he and Backblaze were now speaking on behalf of B&A. *Id*. ¶ 25. Mr. Harris also seemed to assert that there was no sublease between Ms. Okcu and Backblaze. *Id*. ¶ 26. As a result, Mr. Harris claimed that Backblaze did not need to vacate the back of Ms. Okcu's store and Backblaze did not need to return the store to the condition it was in before the sublease. *Id*. Throughout this discussion, Mr. Harris intimidated and mocked Ms. Okcu, as he laughed at her ability to speak English. *Id*.

About one week later, Mr. Harris went to Ms. Okcu's store and now seemed to acknowledge the existence of the Sublease, but stated that Backblaze would not pay its rent, would not restore the store to its original condition, and would not provide notice when it vacated the premises. *Id*. ¶ 27. Ms. Okcu asked Mr. Harris whether Backblaze was ending its sublease agreements with any of the other stores at 300 Ben Franklin Court. *Id*. Mr. Harris responded that they were only ending their agreement with Ms. Okcu because they disliked her. *Id*. When Ms. Okcu asked if Backblaze's behavior was because she was a Muslim and of non-European descent, Mr. Harris laughed at her. *Id*.

On February 10, 2023, Ms. Okcu filed a complaint and asserted eight causes of action against the Defendants, including claims related to discrimination, breach of contract, business torts, and assault. *See* Compl. On May 15, 2023, Defendants filed a motion to dismiss Ms. Okcu's third, fourth, and fifth causes of action, *i.e.*, breach of contract, intentional interference

1    with contractual relations, and assault.  ECF No. 33 ("Mot.").  The breach of contract claim relates

2    to the Sublease between Ms. Okcu and Backblaze; Ms. Okcu asserts this claim against Backblaze

3    only.  Compl. ¶¶ 40-46.  The intentional interference with contractual relations claim relates to the

4    lease between Ms. Okcu and B&A; Ms. Okcu asserts this claim against all Defendants.  *Id*. ¶¶ 47-

5    52.  Lastly, the assault claim relates to Ms. Uzunoglu's ongoing harassment of Ms. Okcu and she

6    asserts this claim against Backblaze and Mr. Uzunoglu.  *Id*. ¶¶ 53-58.

7         On May 30, 2023 and June 6, 2023, the parties filed opposition and reply briefs,

8    respectively.  ECF Nos. 40 ("Opp'n"), 43 ("Reply").  A hearing was originally scheduled for

9    November 14, 2023 but was vacated, with the court finding the instant motion suitable for

10   determination without oral argument.  ECF No. 49.

11   **II.    LEGAL STANDARD**

12        **A.    Rule 12(b)(6)**

13        Parties may move to dismiss for "failure to state a claim upon which relief can be granted."

14   Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff's "factual

15   allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of

16   success.'"  *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v.*

17   *Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)).  The

18   court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the

19   light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519

20   F.3d 1025, 1031 (9th Cir. 2008).  "A claim has facial plausibility when the Plaintiff pleads factual

21   content that allows the court to draw the reasonable inference that the Defendant is liable for the

22   misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a

23   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

24   unlawfully."  *Id*.  (quoting *Twombly*, 550 U.S. at 556). "Although for the purposes of a motion to

25   dismiss [the Court] must take all of the factual allegations in the complaint as true," the Court is

26   "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id*. at 678.

27   **III.   DISCUSSION**

28        As an initial point, Defendants submitted a request for judicial notice of Ms. Okcu's

United States District Court
Northern District of California

4

1    complaint, *see* ECF No. 33-2, but the Court denies this request as unnecessary.  The complaint is

2    already filed on the docket, and there is no need to take judicial notice of documents that are

3    already part of the record.  *See* ECF No. 1; *Beal v. Royal Oak Bar*, No. C 13-04911, 2014 WL

4    1678015, at *2 (N.D. Cal. Apr. 28, 2014) (collecting cases).

5        In its motion, Defendants move to dismiss three of Ms. Okcu's causes of action.

6    Defendants argue that (i) the breach of contract claim should be dismissed because Ms. Okcu has

7    failed to plead the Sublease's material terms; (ii) the breach of contract claim fails due to statute of

8    limitation issues; (iii) the intentional interference claim should be dismissed because two of the

9    elements are not satisfied; and (iv) the assault claim against Backblaze should be dismissed

10   because Ms. Okcu has not pleaded facts that support vicarious liability.  The Court addresses each

11   of these arguments below.

12       **A.    Breach of Contract**

13           **1.    Material Terms**

14       Defendants argue that Ms. Okcu's breach of contract claim should be dismissed because

15   she failed to attach the Sublease agreement to her complaint and alternatively, she did not plead

16   the agreement's material terms.  ECF 33-1 ("Mot.") at 3-4, 6-7; ECF No. 43 ("Reply") at 4.  As a

17   result, Defendants assert they do not have fair notice of the claims against them.  *Id*.  Ms. Okcu

18   counters that she was not required to attach a copy of the Sublease and she has pleaded the

19   material terms.  ECF No. 40 ("Opp'n") at 1, 6-7.  In response, Defendants contend that the breach

20   of contract fails because it is unclear if Ms. Okcu's claim relies solely on the Sublease's written

21   terms or additional promises that may have occurred after the parties entered the Sublease.  Reply

22   at 3-4; Compl. ¶ 19.

23       The elements for a breach of contract claim under California law are: "(1) a contract, (2)

24   plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to

25   plaintiff."  *Walsh v. W. Valley Mission Cmty. College Dist*., 66 Cal.App.4th 1532, 1545 (1998).

26   "Identifying the specific provision of the contract allegedly breached by the defendant does not

27   require the plaintiff to attach the contract or recite the contract's terms verbatim.  Rather, the

28   plaintiff must identify with specificity the contractual obligations allegedly breached by the

United States District Court
Northern District of California

1    defendant." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 908 (N.D. Cal. 2020) (quoting *Kaar v.*

2    *Wells Fargo Bank, N.A.*, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016)).  Essentially, "the

3    Court must be able generally to discern at least what material obligation of the contract the

4    defendant allegedly breached." *Langan v. U.S. Serv.'s Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D.

5    Cal. 2014).

6         Here, the Court finds that Ms. Okcu has met this standard for only some aspects of her

7    breach of contract claim.  Contrary to Defendants' assertions, Ms. Okcu is not required to attach a

8    copy of the Sublease to her complaint.  *See Williams*, 449 F. Supp. at 908.  Instead, she is required

9    to plead the contractual obligations that were breached and has met this standard for some of her

10   allegations.  *See id*.  For example, Ms. Okcu asserts that Defendants breached the Sublease when

11   they refused to restore the premises to their initial condition, and she includes the relevant

12   language from the Sublease in her complaint.  *See* Compl. ¶¶ 18, 44.  Similarly, she asserts that

13   Backblaze promised that they would provide her access to her bathroom and water facilities, but

14   they failed to do so.  *See id*.  But for some of her notice allegations, Ms. Okcu has not provided

15   sufficient information.  Ms. Okcu vaguely asserts that Defendants breached the Sublease because

16   they terminated it without proper notice, but the actual notice requirement of the Sublease is

17   unclear.  *See Dorian v. Cmty. Loan Servicing, LLC*, No. 22-CV-04372, 2022 WL 7620460, at *6

18   (N.D. Cal. Oct. 13, 2022) (dismissing breach of contract claim where complaint "[did] not plead

19   the material terms of the specific contract at issue or allege which particular obligations Defendant

20   breached.").

21        As for Defendants' arguments regarding Ms. Okcu's failure to specify if her claims relate

22   to a written agreement or an oral promise, the Court finds them unpersuasive at this time.  First,

23   these arguments were raised for the first time in a reply brief, which is improper.  *See FT Travel--*

24   *New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts

25   decline to consider arguments that are raised for the first time in reply.").  And second, Defendants

26   appear to be describing the pleading standard in California state court, rather than federal court.

27   *See Std. Furniture Mfg. Co. v. LF Prods. PTE Ltd*, SACV 16-02097, 2017 U.S. Dist. LEXIS

28   174293, at *10 (C.D. Cal. June 13, 2017); *James River Ins. Co. v. DCMI, Inc.*, No. C 11-06345,

United States District Court
Northern District of California

1    2012 WL 2873763, at *3 (N.D. Cal. July 12, 2012) (declining to apply California state pleading

2    standards, such as requiring the complaint to indicate "whether the contract is written, oral, or

3    implied by conduct").

4        For these reasons, the Court dismisses Ms. Okcu's breach of contract in part, specifically

5    the allegations related to notice, but with leave to amend.

6                    **2.    Statute of Limitations**

7        Defendants further argue that Ms. Okcu's breach of contract claim should be dismissed,

8    because even accepting the allegations as true, the partition wall was installed over four years ago,

9    so Ms. Okcu's claims are time-barred.  Mot. at 7-8; Reply at 4-5; Compl. ¶ 21.  Conversely, Ms.

10   Okcu avers her breach of contract claim is not time-barred because the statute of limitation bar is

11   not apparent on the face of the complaint, and she has pleaded a continuing course of conduct up

12   to and including late 2022.  Opp'n at 1, 7-8.  In addition, Ms. Okcu claims that statute of limitation

13   arguments "are not appropriate" for a motion to dismiss.  *Id*. at 8.

14       While "[a]n assertion that a suit is barred by the statute of limitations is an affirmative

15   defense … a defendant may still raise a motion to dismiss based on this defense if the running of

16   the limitations period is apparent on the face of the complaint."  *Felicien v. PNC Mortg*., No. C-

17   11-2388, 2012 WL 1413231, at *2 (N.D. Cal. Apr. 23, 2012) (citing *Jablon v. Dean Witter & Co*.,

18   614 F.2d 677, 682 (9th Cir. 1980)).  A court may only grant a motion to dismiss based on statute

19   of limitations grounds "if the assertions of the complaint, read with the required liberality, would

20   not permit the plaintiff to prove that the statute was tolled."  *Morales v. City of Los Angeles*, 214

21   F.3d 1151, 1153 (9th Cir. 2000) (cleaned up).

22       There are exceptions to a statute of limitation defense.  For example, claims can be tolled

23   under the continuing violation doctrine, where courts may "aggregat[e] a series of wrongs or

24   injuries for purposes of the statute of limitations, treating the limitations period as accruing for all

25   of them upon commission or sufferance of the last of them."  *Aryeh v. Canon Bus. Sols., Inc*., 55

26   Cal. 4th 1185, 1192 (2013) (citations omitted).  Generally, the continuing violation doctrine is

27   invoked where the injuries are a "series of small harms, any one of which may not be actionable

28   on its own" or where the "wrongful course of conduct became apparent only through the

United States District Court
Northern District of California

7

1    accumulation of a series of harms." *Id.* at 1197-98 (citations omitted).

2         The statute of limitations for a breach of contract claim is between two to four years,

3    depending on whether the contract is oral or written.  Cal. Civ. Proc. Code §§ 337(a), 339(1).

4    Defendants assert that Ms. Okcu's entire breach of contract claim should be dismissed, but Ms.

5    Okcu characterizes her claim as consisting of three types of breach: (1) Defendants built a wall

6    which cut Ms. Okcu off from her bathroom and water facilities, and led to her closing Kim's

7    Tailoring during business hours; (2) Defendants terminated the Sublease without proper notice,

8    and (3) Defendants refused to restore the subleased premises to their original condition.   The

9    Court will evaluate each of Defendants' actions below.

10        Regarding Defendants' decision to cut off access to Ms. Okcu's bathroom and water

11   facilities, the Court finds that these claims are time-barred.  The complaint clearly states that

12   Defendants "have denied [Ms. Okcu] access to bathroom facilities and water for nearly ten years."

13   Compl. ¶ 21.  While Ms. Okcu attempts to invoke the continuing violation doctrine to toll her

14   claims, she has failed to plead either of the two factors that would justify applying this doctrine.

15   Her injuries do not appear to be a "series of small harms, any one of which may not be actionable

16   on its own."  *See Aryeh*, 55 Cal. 4th at 1197-98.   Instead, the complaint appears to assert "a series

17   of discrete, independently actionable alleged wrongs."  *See id.* at 1198.  Further, this is not a case

18   where Defendants' "wrongful course of conduct became apparent" over time, because Ms. Okcu

19   was aware of when the wall was built.  *See id*.

20        But as to Defendants' other two actions, specifically Defendants' termination of the

21   Sublease and refusal to restore the premises, the Court declines to dismiss based on statute of

22   limitation grounds.  Based on the complaint, these events appeared to have occurred sometime in

23   November or December 2022 and Ms. Okcu filed her complaint in February 2023.  *See* Compl. ¶¶

24   24, 26-27, 44.  Both actions occurred within the statute of limitations period for a breach of

25   contract.  *See* Cal. Civ. Proc. Code §§ 337(a), 339(1).

26        Accordingly, the Court dismisses Ms. Okcu's breach of contract in part, specifically

27   allegations related to her bathroom or water facilities, but with leave to amend.

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**B.     Intentional Interference with Contractual Relations**

Defendants argue that Ms. Okcu's fourth cause of action should be dismissed because she has failed to plead two of the required elements: (1) whether the contract at issue was breached by the contracting party and (2) whether the breach was caused by Defendants' unjustified or wrongful conduct.  Mot. at 4, 8.  By contrast, Ms. Okcu asserts that both elements are satisfied by the allegations in the complaint.  Defendants' actions resulted in a "severed contractual relationship" between her and B&A.  Opp'n at 2, 9-10.  Ms. Okcu also contends that to state an intentional interference claim, she is only required to plead that Defendants engaged in conduct that interfered with the contract itself, rather than Defendants' conduct was wrongful.  *Id*. at 11.  In response, Defendants further argue that regarding breach, Ms. Okcu was required to plead that Defendants induced the third party, B&A, to breach their contract with Ms. Okcu.  Reply at 5.  In comparison, Ms. Okcu pleaded that she terminated her lease with B&A.  *Id*.

To plead an intentional interference with contractual relations claim, the plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd*., 531 F.3d 767, 774 (9th Cir.2008) (quoting *Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist*., 132 Cal. Reptr.2d 57, 73 (Ct. App. 2003)).

The Court finds that Defendants' arguments are generally unavailing because they do not reflect the proper pleading standard for an intentional interference claim.  However, the Court will still dismiss Ms. Okcu's claim, with leave to amend, because she relies on conclusory allegations to plead the third element of her claim.

Defendants assert three arguments for why Ms. Okcu has failed to properly plead the third and fourth elements of an intentional interference claim.  First, Defendants contend that Ms. Okcu has failed to plead there was a breach of her lease with B&A.  Mot. at 8.  But Defendants fail to acknowledge that under California law, a plaintiff may assert an intentional interference claim based on a breach or a disruption to the contractual relationship.  *See Sun Grp. U.S.A. Harmony*

9

*City, Inc. v. CRRC Corp. Ltd.,* No. 17-CV-02191, 2018 WL 10689420, at *11 (N.D. Cal. July 9, 2018) ([A]lthough [Plaintiff] need not allege an actual breach, it must at least allege a disruption of the contractual relationship."); *Pac. Gas & Elec. Co. v. Bear Stearns & Co*., 50 Cal. 3d 1118, 1129 (1990) ("Plaintiff need not allege an actual or inevitable breach of contract in order to state a claim for disruption of contractual relations.") ("*Bear Stearns*").  Disruption in this context can include a wide array of activities, such as when the defendant's behavior has made the plaintiff's performance more costly or burdensome.  *See Bear Stearns*, 50 Cal. at 1129; *AmeriPOD, LLC v. DavisREED Constr. Inc*., No. 3:17-CV-00747, 2017 WL 2959351, at *6 (S.D. Cal. July 11, 2017) (finding intentional interference counterclaim sufficiently pleaded where the plaintiff's behavior "severely impacted [Defendant's] ability to timely complete" a project).  Here, Ms. Okcu has alleged that due to Defendants' actions, she was forced to end her lease with B&A and this is sufficient for pleading purposes.

Second, Defendants assert that Ms. Okcu has failed to plead her claim because there are no allegations in the complaint that Backblaze was not allowed to terminate the Sublease or that this termination was wrongful or unjustified.  Mot. at 8.  But Defendants are not relying on the proper standard.  To assert an intentional inference with contractual relations claim, Ms. Okcu is only required to plead that Defendants interfered with her B&A lease.  *See Quelimane Co. v. Stewart Title Guar. Co*., 19 Cal. 4th 26, 55, as modified (Sept. 23, 1998) ("Because interference with an existing contract receives greater solicitude than does interference with prospective economic advantage … it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself.")  It is the interference with the third-party contract that is itself wrongful.  *Id*. at 56.

Finally, in reply, Defendants contend that Ms. Okcu was required to plead that Defendants' behavior resulted in the third party, B&A, breaching their lease with Ms. Okcu.  Reply at 5.  By contrast, Ms. Okcu simply pleaded that she ended the lease.  *Id*.  But Defendants are once again relying on an incorrect standard.  While the paradigmatic fact pattern is when the defendant induces a third party to breach or disrupt a contract, an intentional interference claim can also be based on interference with the plaintiff's performance.  5 B.E. Witkin, *Witkin Summary of*

1   *California Law* § 849 (11th ed. 2023); *Lipman v. Brisbane Elementary Sch. Dist.*, 55 Cal. 2d 224,

2   232 (1961) (abrogated on other grounds by *Brown v. Kelly Broad. Co.,* 48 Cal. 3d 711, 753 n.37

3   (1989)) ("The most general application of the rule is to cases where the party with whom the

4   plaintiff has entered into an agreement has been induced to breach it, but the rule is also applicable

5   where the plaintiff's performance has been prevented or rendered more expensive or burdensome

6   …").  Here, the complaint states Defendants' behavior forced Ms. Okcu to end her lease with

7   B&A and that is permissible for pleading purposes.  *See id.*

8          In sum, the Court finds Defendants' arguments do not reflect the proper pleading standard

9   for an intentional interference claim.  But Ms. Okcu has still failed to plead the third element of

10  her claim because she relies on conclusory allegations.  In particular, she states that "Defendants

11  knew that if Backblaze terminated its sublease with Plaintiff, Plaintiff would be forced to

12  terminate its lease with [B&A]."  *See e.g.*, Compl. ¶ 50.  Ms. Okcu, however, does not plead how

13  Defendants' actions, such as terminating the Sublease, forced her to end her lease with B&A.  *See*

14  *e.g.*, *Haliburton Int'l Foods, Inc. v. Marasco*, EDCV 20-1069, 2020 U.S. Dist. LEXIS 246537, at

15  *12-13 (C.D. Cal. Nov. 4, 2020) (dismissing intentional interference claim where it relied on

16  "mere conclusory statements"); *AK Futures LLC v. LCF Labs Inc.*, No. 821CV02121, 2022 WL

17  2784409, at *7 (C.D. Cal. June 24, 2022) (dismissing intentional interference claim where the

18  complaint failed to allege how the intentional conduct caused the alleged breach).

19         Accordingly, the Court dismisses Ms. Okcu's fourth cause of action for intentional

20  interference with contractual relations, but with leave to amend.

21         **C.        Assault and Vicarious Liability**

22         Defendants argue that Ms. Okcu's assault claim against Backblaze should be dismissed

23  because she has failed to plead the facts needed to invoke vicarious liability.  Mot. at 9-10.  For

24  example, Ms. Okcu has failed to provide dates for the alleged threats and did not allege that these

25  actions were either ordered by Backblaze or occurred in the course and scope of Mr. Uzunoglu's

26  employment.  *Id*.  Ms. Okcu contends she has sufficiently pleaded her assault claim against both

27  Mr. Uzunoglu and Backblaze.  Opp'n at 11-13.  She has pleaded that Mr. Uzunoglu was acting as

28  an agent and/or employee of Backblaze when the assaults occurred.  *Id*. at 12.  Further, Ms. Okcu

1    alleges that all the Defendants were acting together based on a coordinated plan to drive her out of

2    her lease.  *Id*. at 13.  In reply, Defendants reiterate their earlier arguments but also note that Ms.

3    Okcu's allegations regarding a coordinated plan were raised only in her opposition brief and not in

4    her original complaint.  Reply at 6.  Thus, Defendants urge the Court to disregard these new

5    arguments when evaluating its motion to dismiss.  *Id.*

6        An employer can be vicariously liable for torts committed by its employees or agents.[1]

7    *Lisa M. v. Henry Mayo Newhall Mem'l Hosp*., 907 P.2d 358, 360 (Cal. 1995).  An employee's

8    "willful, malicious and even criminal torts may fall within the scope of his or her employment for

9    purposes of respondeat superior, even though the employer has not authorized the employee to

10    commit crimes or intentional torts."  *Id*. at 360-61.  To hold an employer liable, the tort must be

11    "engendered by" or "arise from" the employment.  *Id*. at 362.  "[T]he incident leading to injury

12    must be an 'outgrowth' of the employment; the risk of tortious injury must be inherent in the

13    working environment; or typical of or broadly incidental to the enterprise [the employer] has

14    undertaken."  *Id*. (internal citations omitted).  In addition, courts will also consider whether the tort

15    was foreseeable based on the employee's duties.  *Id*.  "The employment, in other words, must be

16    such as predictably to create the risk employees will commit intentional torts of the type for which

17    liability is sought."  *Id*.

18        By contrast, an employer will not be liable for an employee's tort where there is no causal

19    nexus[2] to the employee's work.  *Id*. at 361.  "If an employee inflicts an injury out of personal

20    malice, not engendered by the employment, the employer is not liable."  *Id*. (quoting *Carr v. Wm.

21    C. Crowell Co*., 28 Cal. 2d 652, 656 (1946)).

22        Courts have found vicarious liability claims are adequately pleaded where an employee's

23    tortious actions or behavior arose from the work environment.  In *Yang v. ActioNet, Inc*., No.

24    CV1400792, 2015 WL 13376522, at *3-4 (C.D. Cal. Nov. 6, 2015), the court denied a motion to

---

[1] For the vicarious liability analysis, the Court relies on California law, since the alleged tort took place in San Mateo, California.  *See e.g., Green v. Hall*, 8 F.3d 695, 698–99 (9th Cir. 1993) (applying respondeat superior law of the state where the intentional tort occurred); Compl. ¶ 23.
[2] Nexus in this context differs from "but for" causation.  *Lisa M.,* 907 P.2d at 362. "That the employment brought tortfeasor and victim together in time and place is not enough … the incident leading to injury must be an 'outgrowth' of the employment."  *Id*. (internal citations omitted).

United States District Court
Northern District of California

dismiss various vicarious liability claims.  There, an altercation occurred between the plaintiff, Mr. Yang, and his co-worker, Mr. Tymony; both men worked for ActioNet, Inc. ("ActioNet") and they sat next to each other in an office.  *Id*. at *1.  Over time, Mr. Tymony became increasingly angry at Mr. Yang for tapping his foot at his workstation, eating at his desk, and using their employer's refrigerator to store soda.  *Id*. at *1-2.  Eventually, this resulted in Mr. Tymony screaming at Mr. Yang and grabbing him by the neck.  *Id*. at *2.  Mr. Yang later asserted vicarious liability claims against ActioNet, based on Mr. Tymony's actions.  *Id*. at *1.  The court found Mr. Yang had adequately alleged a plausible vicarious liability theory, because Mr. Tymony's behavior arose out of work-related interactions between him and Mr. Yang.  *Id*. at *3.  Aside from issues in the workplace, Mr. Tymony did not appear to have a personal dispute with Mr. Yang.  *Id*.

Likewise, in *Hernandez v. Hard Rock Cafe International (USA), Inc*., No. 2:07-CV-1088, 2007 WL 2782624, at *5 (E.D. Cal. Sept. 24, 2007), the plaintiff had sufficiently alleged tortious conduct that was casually related to "employment with defendant and an outgrowth of workplace relationships, conditions and events."  In *Hernandez*, the plaintiff worked for defendant as a waitress and she was sexually harassed at her workplace by her coworker, Stewart Garnett ("Garnett").  *Id*. at *1.  The plaintiff asked her manager to not schedule her for the same shifts as Garnett, but her manager disregarded her requests and Garnett continued to harass her.  *Id*. at *2.  Eventually, the plaintiff asserted *inter alia* assault and battery claims against the defendant based on Garnett's behavior.  *Id*.  The court held that the plaintiff had adequately pleaded her vicarious liability claim.  *Id*. at *5.  Garnett had harassed the plaintiff at their shared workplace and his conduct was reasonably foreseeable because plaintiff had notified her manager about the harassment multiple times.  *Id*.

Conversely courts have granted motions to dismiss vicarious liability claims when the tortious behavior was driven by conduct outside the scope of employment.  For instance, in *Chan v. Charter Communications Holding Co., LLC*, No. EDCV150886, 2015 WL 13918276, at *4 (C.D. Cal. Sept. 23, 2015), the plaintiffs failed to plead facts that established respondeat superior liability.  In that case, the plaintiffs' neighbor, Tommy Curran ("Curran") was an employee of the defendants, which were cable companies.  *Id*. at *1.  Curran was trying to monitor the plaintiffs'

1    exterior cable box because Curran believed someone in the plaintiffs' home had hacked into his

2    computer. *Id*. at *2.  Curran then attempted to enter the plaintiffs' home, where he hit the

3    plaintiffs' son with a door. *Id*.  The plaintiffs later brought a battery claim against the defendants

4    based on vicarious liability. *Id*. at *4.  The court concluded that plaintiffs' allegations were

5    insufficient, because Curran's motivation appeared to be driven by "personal malice, not

6    engendered by the employment." *Id*. (citations omitted).  Curran had only interacted with

7    plaintiffs because they were neighbors, not because of Curran's work with defendants. *Id*.

8    Further, the tort was not foreseeable because the plaintiffs had failed to allege that Curran was

9    performing work on their cable box or that he typically performed work that caused him to interact

10   with customers. *Id.*

11          Here, Ms. Okcu has failed to plead a plausible vicarious liability claim.  While the assault

12   allegations are severe, *i.e*., Mr. Uzunoglu physically threatened Ms. Okcu and declared he would

13   kill her on at least three separate occasions, there are no facts that suggest these actions arose from

14   Mr. Uzunoglu's employment.  For example, the current allegations do not suggest that Mr.

15   Uzunoglu was at Ms. Okcu's store as part of his job as a Backblaze handyman, or that he typically

16   interacted with other shopkeepers as part of his responsibilities. *See id*.  Ms. Okcu is not required

17   to plead the exact date or time of the assault as suggested by Defendants, but additional facts about

18   the circumstances, such as whether Mr. Uzunoglu was on duty at the time of the assault, could

19   make the claim plausible. *See id*. (listing additional facts that could support a vicarious liability

20   claim).  Further, as currently pleaded, it is unclear whether Mr. Uzunoglu's behavior was driven

21   by workplace interactions or simply a personal grudge. *Cf Yang*, 2015 WL 13376522, at *3 ("Mr.

22   Tymony did not seem to have a personal dispute with Plaintiff … Rather in reviewing the

23   [complaint], Mr. Tymony [sic] animosity toward Plaintiff arose directly from his intolerance of

24   Plaintiff's work-related habits.").  At most, the complaint states that Mr. Uzunoglu was an

25   employee of Backblaze, but this alone is not sufficient to invoke vicarious liability. *See Doe v.*

26   *Uber Techs., Inc*., No. 19-CV-03310, 2019 WL 6251189, at *3 (N.D. Cal. Nov. 22, 2019) (even if

27   the tortfeasor was defendant's employee, defendant is only vicariously liable if the torts were

28   committed within the scope of employment).

United States District Court
Northern District of California

14

1

2

3

4

5

6

      Although Ms. Okcu asserts in her opposition that Mr. Uzunoglu's behavior was the result of a coordinated plan by the Defendants, these allegations are not found in the complaint.  As a result, the Court will not consider them as part of this inquiry.  *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

7

8

9

      Since Ms. Okcu has failed to plausibly plead a vicarious liability theory for Mr. Uzunoglu's alleged assault, the Court dismisses Ms. Okcu's fifth cause of action as to Backblaze, but with leave to amend.

10

## IV.   CONCLUSION

11

      For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** in part.

12

13

14

15

16

      Regarding Count Three (Breach of Contract against Backblaze): The Court **DISMISSES WITH LEAVE TO AMEND** on material term grounds only to the extent Ms. Okcu asserts claims based on improper notice when terminating the Sublease.  In addition, the Court **DISMISSES WITH LEAVE TO AMEND** on statute of limitation grounds only to the extent Ms. Okcu asserts claims based on the bathroom and water facility allegations.

17

18

      Regarding Count Four (Intentional Interference with Contractual Relations against all Defendants): The Court **DISMISSES WITH LEAVE TO AMEND** the entire claim.

19

20

      Regarding Count Five (Assault against Backblaze and Mr. Uzunoglu): The Court **DISMISSES WITH LEAVE TO AMEND** the entire claim as to Backblaze only.

21

22

23

      Ms. Okcu may amend her complaint within 21 days of this Order.  In addition, courtesy copies of a redlined version of the first amended complaint must be provided to the Court and to opposing parties.  Defendants shall respond within 21 days thereafter.

24

25

//

26

27

//

28

United States District Court
Northern District of California

15

1   This disposes of ECF No. 33.

2         **IT IS SO ORDERED.**

3   Dated: January 2, 2024

4

5

6   TRINA L. THOMPSON
    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28