Steven N. Williams (State Bar No. 175489)
**STEVEN WILLIAMS LAW P.C.**
201 Spear Street, Suite 100
San Francisco, California 94105
Telephone: (415) 697-1509
Email: swilliams@stevenwilliamslaw.com

*Attorneys for Plaintiff Hatice Okcu*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HATICE OKCU, individually, <br><br>        *Plaintiff,* <br>    v. <br><br> BACKBLAZE, INC., BRIAN WILSON, SEAN HARRIS, DERMAN UZUNOGLU, and Does 1 - 10, <br><br>        *Defendants*, | Case No. 3:23-cv-614 <br><br> **AMENDED COMPLAINT** |

**I.     INTRODUCTION**

1.     Plaintiff Hatice Okcu ("Plaintiff or Ms. Okcu") brings this action against Defendant Backblaze, Inc. ("Defendant" or "Backblaze") and certain of its employees and agents for violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and related claims arising out of a concerted campaign against Plaintiff motivated by ethnic discrimination in violation of United States law.

**II.     JURISDICTION AND VENUE**

2.     This case is brought under a federal statute, § 1981 of the Civil Rights Act. As such, this Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

3.     Venue of this action is proper in this Court as Defendant resides in this District, as defined in 28 U.S.C. 1331, and the acts in dispute were committed in this District.

III. **THE PARTIES**

    A. **PLAINTIFF**

4. Plaintiff Hatice Okcu, also known as Kim Okcu, is a resident of San Mateo County California. Plaintiff owned and operated an alteration shop called Kim's Tailoring located at 300 Ben Franklin Court in San Mateo, California, for over thirty years since 1992.

5. Plaintiff immigrated to United States from Turkey in 1991 as a Kurdish refugee and later became a citizen of the United States.



*Plaintiff with her mother and her employee Yoshi.*

    B. **DEFENDANTS**

6. Backblaze, Inc. ("Backblaze") is a cloud storage and data backup company, headquartered at 500 Ben Franklin Court, San Mateo, California 94401. The company was established in 2007 and launched its initial public offering ("IPO") in October 2021. By its own admission, the company serves 500,000 customers in over 175 countries. The company reported $22.1M in revenue and $11.2M in gross profits for the third quarter for 2022.

7. Defendant Brian Wilson is an individual residing at 7104 West Rim Drive, Austin Texas 78731. Mr. Wilson is co-founder and the Chief Technology Officer ("CTO") of Backblaze. In his role as CTO of Backblaze, Mr. Wilson was the primary contact person with Ms. Okcu regarding the terms of their sub-lease at 300 Ben Franklin Court, acting on behalf of Defendant Backblaze.

8. Defendant Sean Harris is an individual residing at 4450 Mira Loma Drive, Pittsburg, CA 94565. Mr. Harris is the Senior Facilities Manager at Backblaze. Mr. Harris is responsible for facilities organization at 300 Ben Franklin Court, acting on behalf of Backblaze.

9. Defendant Derman Uzunoglu is an individual residing at 860 Meridian Bay Lane, Unit 233, Foster City, California 94404. For much of the period covered by this complaint, Mr. Uzunoglu was on the premises at Ben Franklin Court as an invitee of Backblaze, for whom he did contracting work. At some point, Mr. Uzunoglu became employed by Backblaze as a "handyman". He received a salary and shares in the IPO.

### C. DOE DEFENDANTS

10. The true names and capacities of the Defendants named herein as Does 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff who therefore sues such Defendants by fictitious names. Plaintiff is informed and believes that Doe Defendants are California residents, or individuals over whom this Court nevertheless has jurisdiction. Plaintiff will amend her Complaint to show such true names and capacities when they are ascertained. Based on information and belief, Plaintiff alleges that Defendants sued as Does 1 through 10, and each of them, are liable in whole or in part for the wrongful acts alleged herein.

### D. AGENCY, AIDING AND ABETTING, AND CONSPIRACY

11. At all relevant times, each Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.

1. Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.

12. In committing the wrongful acts alleged herein, the Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of the improper acts and transactions that are the subject of this Complaint.

13. Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his, her or its overall contribution to and furtherance of the wrongdoing.

## IV. FACTUAL BACKGROUND

14. Plaintiff owned and operated an alteration shop called Kim's Tailoring located at 300 Ben Franklin Court in San Mateo, California for over thirty years. The entire time Plaintiff operated her alteration shop, she leased the premises from a property management company called Behling and Associates.



*Plaintiff at her tailoring shop in downtown San Mateo, California.*

15. The area where 300 Ben Franklin Court is located is a courtyard in the affluent community of downtown San Mateo. With the

historic Ben Franklin Hotel on one side and Fourth Avenue, with its shops and restaurants, on the other , it draws customers from nearby Hillsborough, Burlingame and San Mateo. ,. The courtyard houses several businesses, all of which, like Plaintiff's tailor shop, are located on the first floor of a two-story building.

16. In or around 2014, Backblaze started taking over the Ben Franklin Court by subleasing the rear of all the stores located on the first floor and leasing the entire second floor of the building. On information and belief, Backblaze entered into a similar arrangement with store owners on Fourth Avenue, San Mateo, just to the south of Ben Franklin Court. Also, based on information and belief, the reason Backblaze has subleased the rear of the existing businesses and the second floor is because zoning in the area prevents Backblaze from being in the front.

17. Since about 2014 and after entering in the sublease and lease agreements, Backblaze has acted as a co-landlord for most or all the stores located at the Ben Franklin Court. Meanwhile, Backblaze has significantly altered the area, doing major construction and electrical work on all the stores located at Ben Franklin Court and the parking lot on the rear of Ben Franklin Court, including installing electrical chargers in the parking lot.

18. Plaintiff entered into a sublease agreement with Backblaze in August 2014. In relevant part, the agreement states that Plaintiff shall sublease to Backblaze "a portion of the space described as 300 Ben Franklin Court, San Mateo, California 94401 (the "Premises"), which comprises an area of approximately 442 square feet located in the back of 300 Ben Franklin Court. The premises are more particularly described as follows: Backblaze shall occupy the rear portion of the space, approximately 26 feet from the rear door and the entire width of that space, 17 feet. The premises shall be used for only the following permitted use: Office." The agreement also states that "At the expiration of the lease, the Tenant [Backblaze] will quit and surrender the premises in as good a state and condition as they were at the commencement of the lease."

19. After the sublease was entered into, Backblaze erected a wall in the rear of Plaintiff's store partitioning the store, and in the process, cut off Plaintiff's bathroom and water access. At the time of entering in the sublease and partitioning the store, Backblaze promised Plaintiff she would be provided access to the bathroom. However, Backblaze consistently denied Plaintiff access to bathroom and water facilities since that time despite repeated requests.

20. Plaintiff performed everything required of her under the sublease, and did her best to get along with Backblaze and its employees.

21. Backblaze, however, refused to offer Plaintiff the same treatment, including the same sublease terms, that it offered to other business owners who are non-Middle Eastern and/or non-immigrant and/or non-Muslim and/or male. Backblaze and each of the individual named defendants has engaged in discriminatory conduct against Plaintiff in violation of Federal and California law. They denied her access to bathroom facilities and water for nearly ten years, forced her to work in inhabitable conditions, and forced her to close her shop during normal business hours to find and use restroom and water facilities outside her store. Backblaze did not cut-off the bathroom and water access of other store operators that it subleased from. Instead, it has entered other arrangements with them allowing them use of water and bathroom facilities. This course of discriminatory conduct caused damages to Plaintiff, including lost revenue from and the ultimate closure of her business.

22. Backblaze employees and agents made physical threats against Plaintiff, used racial and ethnic terms in their verbal attacks on her, insulted her ability to speak English, and engaged in other acts of intimidation, harassment, and bullying tactics to force her out of the store.

23. Backblaze handyman, Derman Uzunoglu, made physical threats and used racially charged language and bullied Plaintiff on several occasions. Mr. Uzunoglu went to Plaintiff's store and threatened to kill her, yelling at her that he was going to kill her three times. He also told Plaintiff that she should get out of her store, that nobody liked her, that he was going to get her kicked out of the store if she did not voluntarily leave, and even went as far as telling Plaintiff to get out of the United States.

24. On or about November 2, 2022, Backblaze senior facilities manager, Sean Harris engaged in unlawful conduct towards Plaintiff. Mr. Harris went to Plaintiff's store and told her Backblaze was taking over Plaintiff's lease with Behling and Associates, and she would either need to leave or start paying rent to Backblaze. When Plaintiff tried to ask questions, Mr. Harris told Plaintiff he had "full discretion and authority" to do as he pleases, and that she should not attempt to speak with anyone else at Backblaze, including Backblaze CTO Brian Wilson, who had been Plaintiff's contact in the past – falsely telling Plaintiff Mr. Wilson no longer worked for Backblaze – even though Mr. Wilson continues to be a Backblaze employee.

25. Mr. Harris also warned Plaintiff not to speak with Behling and Associates, telling her that her lease with Behling and Associates does not exist or is invalid, and regardless, he/Backblaze was speaking on behalf of Behling and Associates.

26. Additionally, Mr. Harris told Plaintiff that there was not a sublease between Plaintiff and Backblaze, and that Backblaze did not have to vacate the rear of her store or provide any type of notice to Plaintiff before terminating the sublease despite prior representations from Backblaze CTO Brian Wilson that Backblaze would provide a minimum of 90 days notice. Mr. Harris told Plaintiff that Backblaze did not need to restore the property to the condition it took it in, even though the sublease expressly requires Backblaze to do so. During this entire conversation, Mr. Harris was intimidating, insulting and disrespectful. He was loud, kept interrupting Plaintiff and made fun of her language skills and laughed at her inability to speak English fluently.

27. About a week or so after the incident described in the immediately preceding paragraph, Mr. Harris went back to Plaintiff's store—even though Plaintiff had asked Mr. Harris to not return to her store and communicate with Plaintiff's adult children for any issues— and engaged in similar conduct in a similar tone. He told Plaintiff Backblaze would stop paying the sublease, would not restore the store to the condition that it was in when Backblaze took possession, and would not provide notice as to when Backblaze would stop payment on the sublease. When Plaintiff questioned Mr. Harris as to whether Backblaze was stopping its sublease arrangement with any other store operator, Mr. Harris told Plaintiff no, that it was only her because Backblaze did not like Plaintiff. When Plaintiff asked Mr. Harris why she was being singled out and if it was because she was non-European and Muslim, Mr. Harris laughed in Plaintiff's face.

28. Since that time, Mr. Harris has continued to harass Plaintiff by showing up and standing and waiting outside her store and staring at Plaintiff for lengthy periods of time all in an attempt to intimidate her.

29. Backblaze, individually and through its employees, has dealt with Plaintiff in a markedly hostile and discriminatory manner. As a result of Backblaze's discriminatory conduct, Plaintiff was denied the same contractual opportunities Backblaze afforded to others who are not members of a protected class and was subjected to blatantly discriminatory words and actions and harassment.

V.      CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1981)**
**Against All Defendants**

30.     Section 1981 of Title 42 of the United States Code, enacted by the Civil Rights Act of 1866, provides for the equality of citizens of the United States. It prohibits racial discrimination in, among other things, contracting on the basis of race, color and ethnicity. This includes, "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

31.     As alleged herein, Backblaze has discriminated against Plaintiff by refusing to offer Plaintiff the same sublease terms it has offered to other store operators it subleased from, and has unlawfully, and in breach of the parties' contractual agreement, cut-off her bathroom and water access, forcing her to close her store during business hours, while allowing other store operators access to water and bathroom facilities. Backblaze, through its employees and agents, has manifested racially discriminatory intent in denying Plaintiff the same contractual terms, and the enjoyment of the same contractual rights, that other similarly situated people and businesses enjoy.

32.     Backblaze's employees have also mounted physical threats against Plaintiff, used derogatory and inflammatory language – targeting Plaintiff because of her race and/or ethnicity. And most recently, Backblaze terminated Plaintiff's sublease, while continuing its arrangement with all other store operators at the premise. While Backblaze maintains that it terminated Plaintiff's sublease for business reasons, it failed to provide any explanation for those business reasons. Backblaze's excuses are not legitimate and belied by its history of discriminatory treatment of Plaintiff, that Backblaze has extended better contractual terms to other store operaters, and that it is singling out Plaintiff.

33.     Backblaze's conduct evidences a discriminatory practice in violation of Section 1981. Backblaze has deprived Plaintiff of the same contractual opportunities it has afforded to individuals outside of the protected class that have been afforded that right and is continuing to deprive her of the same contractual opportunities by terminating her sublease.

34. Backblaze has dealt with Plaintiff in a hostile and discriminatory matter because of her race and/or ethnicity causing Plaintiff to sustain actual damages. Backblaze is also liable to Plaintiff for punitive damages for intentional, oppressive and malicious racial discrimination, as well as for attorneys' fees and costs and expenses in bringing this action.

Wherefore, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
## DISCRIMINATION IN BUSINESS DEALINGS (UNRUH CIVIL RIGHTS, ACT, CAL. CIV. CODE § 51.5)
### Against All Defendants

35. Plaintiff hereby incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

36. Section 51.5 of the California Civil Code provides that "No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from contract with, sell to, or trade with any person in this state on account of any characteristics listed or defined in subdivision (b) or (e) of Section 51 . . . because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics." Those characteristics include "sex, race, color, religion, ancestry, national origin, . . . citizenship, [and] primary language." Cal. Civ. Code Sec. 51(b)

37. Through the actions described above, Backblaze has discriminated against Plaintiff by denying her the same contractual opportunities as it has extended to individuals who are not members of a protected class and treated her in a markedly hostile and discriminatory matter. A substantial motivating reason for Backblaze's conduct was because of Plaintiff's gender, race, ethnicity/ancestry/national origin and/or religion.

38. As a result, Plaintiff was harmed and Backblaze's conduct was a substantial factor in causing Plaintiff harm.

39. Backblaze is liable to Plaintiff for statutory and actual damages, as well as for punitive damages for intentional, oppressive and malicious racial discrimination, and attorneys' fees and costs and expenses in bringing this action.

Wherefore, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT
### Against Backblaze

40. Plaintiff hereby incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

41. On August 8, 2014, Plaintiff and Backblaze entered into a sublease agreement by which Backblaze agreed to sublease the rear part of 300 Ben Franklin Court, San Mateo.

42. Plaintiff complied with all of her obligations under the agreement.

43. Plaintiff has been deprived of the benefits of the agreement with Backblaze.

44. Backblaze breached the agreement by taking actions to deprive Plaintiff from the benefits of the agreement, including cutting-off her bathroom and water access, forcing her to close her store during business hours, while allowing other store operators access to water and bathroom facilities.

45. Plaintiff on a regular basis including every year during her sublease asked Defendants to allow her water and bathroom access. Each time, Defendants passed the issue or delayed it making Plaintiff believe she would at some point be allowed water and bathroom access.

46. Backblaze also breached the agreement by terminating the sublease without proper notice, and refusing to restore the premises to the condition in which Backblaze took it in at the end of the termination of the sublease. Brian Wilson had represented to Plaintiff that Backblaze would provide her with a minimum 90 day notice before it terminated Plaintiff's sublease, however, Backblaze did not adhere to that promise. Backblaze also did not restore the store back to the condition it took it in when it subleased in violation of the parties' agreement.

47. Plaintiff has not excused Backblaze's non-performance.

48. As a proximate result of Backblaze's breach of the agreement, Plaintiff has suffered damages, including in the form of lost business opportunities.

Wherefore, Plaintiff prays for relief as set forth below.

///

///

## FOURTH CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
**Against all Defendants**

49. Plaintiff hereby incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

50. Plaintiff had a valid and enforceable lease with Behling and Associates for 300 Ben Franklin Court for more than thirty years.

51. At all relevant times, Defendants knew of Plaintiff's lease with Behling and Associates. Prior to entering into the sublease with Backblaze, Plaintiff had informed Backblaze of its lease with Behling, and Backblaze had informed her that it would obtain Behling's approval for the sublease and Plaintiff did not have to do anything on her end to get approval;

52. When Sean Harris went to Plaintiff's shop on November 2, 2022, he openly told Plaintiff that Backblaze intended to interfere with Plaintiff's lease. Specifically, Mr. Harris told Plaintiff that Backblaze had intended to take over her lease, and that she would either need to leave or start paying rent to Backblaze. Mr. Harris also admonished Plaintiff from contacting Behling and Associates and told her that her lease with Behling did not exist or was invalid, and regardless, he/Backblaze was speaking on behalf of Behling and Associates.

53. Defendants knew that if they took over Plaintiff's lease increasing her rent or if Backblaze terminated its sublease with Plaintiff without proper notice allowing Plaintiff time to make other arrangements, it would be financially burdensome and/or unfeasible for Plaintiff to continue to stay at the premises and that Plaintiff would be forced to terminate its lease with Behling and Associates. Defendants knew and Plaintiff had told them that the reason why she was subleasing the back of her store was she needed the income to keep her shop open.

54. At all relevant times, Defendants intended to disrupt Plaintiff's lease with Behling and Associates so Backblaze could take over the lease and the premises itself. In fact, after terminating its sublease with Plaintiff, Backblaze confirmed to Plaintiff that it was not vacating the rear of the store and that it struck a deal with Behling and Associates to stay at the premises.

55. Plaintiff was forced to terminate her lease with Behling and Associates and close her

business and sustained harm as a result of Backblaze's conduct. Backblaze's conduct was a substantial factor in causing Plaintiff's harm.

Wherefore, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION
### ASSAULT
### Against Defendants Backblaze and Uzunoglu

56. Plaintiff hereby incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

57. Derman Uzunoglu, acting as an agent and/or employee of Blackblaze, threatened physical and bodily harm to Plaintiff.

58. On several prior occasions, Mr. Uzunoglu had informed Plaintiff that he worked for Backblaze as a handyman and used his responsibilities as a basis to enter Plaintiff's store and to perform various work for Backblaze, including purportedly to conduct site inspections or to check the fire extinguisher.

59. In fact, on the day in question, Plaintiff had observed Mr. Uzunoglu working in the back of Ben Franklin Court on Backblaze's premises.

60. Based on his representations and actions, when Mr. Uzunoglu entered Plaintiff's shop and threatened her, she believed he was acting on behalf of Backblaze

61. Plaintiff reasonably believed that Mr. Uzunoglu intended to carry out the threat.

62. Plaintiff did not consent to Mr. Uzunoglu's conduct.

63. Mr. Uzunoglu's conduct was a substantial factor in causing harm to Plaintiff.

64. The acts of Mr. Uzunuglu, while acting as an agent and/or employee of Backblaze, were willful, wanton, malicious and oppressive, and justify the awarding of punitive damages in an amount to be determined at trial.

Wherefore, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION
### TRESPASS
### Against All Defendants

65. Plaintiff hereby incorporates by reference each of the paragraphs set forth above as though

fully set forth hereinafter.

66. Plaintiff occupied and operated the store located at 300 Ben Franklin Court at San Mateo, California.

67. Backblaze employees and agents Derman Uzunoglu and Sean Harris entered Plaintiff's store on multiple occasions and among other things threatened physical bodily harm, used derogatory language targeting Plaintiff's race and ethnicity, and engaged in bullying and intimidation tactics to scare Plaintiff, all in an effort to force her to vacate her store.

68. Plaintiff did not give permission to Backblaze employees to enter her store and engage in these unlawful acts, and in fact, had explicitly asked Mr. Harris after his November 2, 2022, visit to not communicate with the Plaintiff except through her adult children.

69. Plaintiff was harmed as a result of Backblaze and its employees' conduct, including sustaining severe emotional distress.

70. Backblaze's conduct was a substantial factor in causing Plaintiff's harm.

Wherefore, Plaintiff prays for relief as set forth below.

### SEVENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Against All Defendants

71. Plaintiff hereby incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

72. Defendants intentionally inflicted emotional distress on Plaintiff through the conduct alleged herein, including by engaging in discriminatory practices, threatening physical bodily harm, using derogatory language, targeting Plaintiff because of her gender, race, ethnicity and/or religion, and engaging in bullying and intimidation tactics to scare Plaintiff and force Plaintiff to vacate her store.

73. Defendants' conduct was outrageous.

74. Defendants intended to cause Plaintiff emotional distress, or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress;

75. As a legal result of these acts, Plaintiff suffered severe mental anguish, and emotional distress.

76. Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

77. The acts of Defendants were willful, wanton, malicious and oppressive, and justify the awarding of punitive damages in an amount to be determined at trial.

Wherefore, Plaintiff prays for relief as set forth below.

### EIGHTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**Against All Defendants**

78. Plaintiff hereby incorporates by reference each of the paragraphs set forth above as though fully set forth hereinafter.

79. Defendants inflicted emotional distress on Plaintiff through the conduct alleged herein, including by engaging in discriminatory practices, threatening physical bodily harm, using derogatory language, targeting Plaintiff because of her gender, race, ethnicity and/or religion, and engaging in bullying and intimidation tactics to scare Plaintiff and force her to vacate her store.

80. As a legal result of these acts, Plaintiff suffered severe mental anguish, and emotional distress.

81. Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

Wherefore, Plaintiff prays for relief as set forth below.

**VI.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For general damages according to proof;
2. For special damages according to proof;
3. For attorneys' fees and costs of suit;
4. For punitive and exemplary damages; and
5. For such other and further relief as the court may deem proper.

**VII.  JURY DEMAND**

Pursuant to Rule 38 (b) of the Federal Rules of Procedure, Plaintiff demands a trial by jury in this action.

Dated:  January 23, 2024                    Respectfully Submitted,

**STEVEN WILLIAMS LAW P.C.**

By: _____
      Steven N. Williams

Steven N. Williams (State Bar No. 175489)

**STEVEN WILLIAMS LAW P.C.**
201 Spear Street, Suite 100
San Francisco, California 94105
Telephone:  (415) 260-7909
Email: swilliams@stevenwilliamslaw.com

*Attorneys for Plaintiff Hatice Okcu*